NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0479n.06

Case No. 21-3449

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

PATRICK MURTHA,

    Plaintiff-Appellant,

v.

ROSSFORD EXEMPTED VILLAGE SCHOOLS,
*et al.*,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

FILED
Oct 25, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

**OPINION**

---

Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges.

McKEAGUE, Circuit Judge. The due process protections of the Fourteenth Amendment apply to deprivations of life, liberty, or property. To trigger these safeguards, a plaintiff must assert an interest that merits constitutional protection. Patrick Murtha claims that the Rossford Exempted Village Schools, the Rossford Exempted Village Schools Board of Education, and Superintendent Dan Creps violated his procedural and substantive due process rights by releasing a selectively redacted investigative report regarding claims of sexual harassment made against him, by releasing a letter to the same effect, and by refusing him a name-clearing hearing. The district court granted Defendants' motion to dismiss, finding that Murtha asserted no constitutionally protected interests, and declined to exercise supplemental jurisdiction over the remaining state law claims. Murtha appeals, and we AFFIRM.

## I. Background

Plaintiff Patrick Murtha worked for the Rossford Exempted Village Schools ("Rossford") for fifteen years, beginning in 2004. He served as Assistant Principal and later as Athletic Director. Murtha's last employment contract had an expiration date of July 31, 2019. In early February 2019, a group of female students complained that Murtha harassed them, touching their hair, faces, and shoulders inappropriately. Pursuant to Rossford's anti-harassment policy, the school's administration initiated an investigation of the allegations and placed Murtha on paid administrative leave.

While the investigation was ongoing, Murtha began negotiations with the Rossford Exempted Village Schools Board of Education ("Board") regarding a "Transition Agreement." According to the terms, Murtha agreed that he would complete his existing employment contract working from home, and that he would not seek renewal thereafter. The Board agreed that they had not and would not make any conclusions that Murtha had "engaged in any conduct giving rise to assignment, reassignment, discipline, non-renewal, and/or termination" nor initiate any corresponding proceedings. R. 1, P. 15. The agreement was executed on April 22, 2019.

The investigator's report ultimately found the students' allegations "consistent, credible, and corroborated." R. 1-2, P. 31. The report also found that Murtha had been accused of similar harassing conduct at a prior school and was asked to leave that school due to the misconduct. The report concluded that "discipline is certainly warranted" due to "misconduct" in violation of Rossford's anti-harassment policy. R. 1-2, P. 33.

The investigator sent the report to the superintendent, Dan Creps, on April 10, 2019. Following the execution of the Transition Agreement and in response to public record requests, the investigative report was released to the public with the students' personally identifiable

information redacted.  On May 15, 2019, Creps sent a letter to the Ohio Department of Education informing them of Murtha's resignation.  A week later in response to community requests for information, Creps issued a public letter explaining the procedures Rossford had undertaken to investigate the complaints.

Murtha requested a name-clearing hearing on February 21, 2020, and the Board denied that request.

On April 21, 2020, Murtha sued Rossford, the Board, and Superintendent Creps in federal court.  Murtha alleged violations of substantive and procedural due process under the Fourteenth Amendment, along with state law breach of contract and defamation.  Rossford filed a motion for partial summary judgment on the constitutional claims, which was later recaptioned a motion to dismiss.  The district court granted Rossford's motion for partial dismissal, holding that Murtha did not have liberty or property interests that entitled him to relief.  After dismissing the federal constitutional claims, the district court declined to exercise supplemental jurisdiction over the state law claims.  Murtha appeals.

## II.  Standard of Review

We review *de novo* a district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6).  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Taking "all well-pled allegations as true[,]" *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d

565, 575 (6th Cir. 2008), and "view[ing] the complaint in the light most favorable to the plaintiff," *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017), we must determine whether Murtha has stated a facially plausible claim for relief. Concluding that he has not, we affirm the judgment of the district court.

### III. Discussion

The Transition Agreement is dispositive here. When Murtha voluntarily agreed not to seek renewal of his employment contract, he relinquished any constitutionally protected interest that may have entitled him to relief under the Fourteenth Amendment.

### 1. Procedural Due Process

The Fourteenth Amendment is implicated when state action has deprived a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Although the level of process required depends on several factors, generally, if one of these constitutionally protected interests is at stake, the minimum process required is notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333–34 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70, 570 n.7 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Before determining what level of process is required, however, the court must establish that the state has deprived or threatened to deprive a plaintiff of a sufficient life, liberty, or property interest to trigger due process protection. *Roth*, 408 U.S. at 570–71.

### A. Property Interest

#### i. Continued Employment

Murtha asserts a property interest in his continued employment as an administrator for Rossford, based on the Transition Agreement governing his departure. He claims that his employment contract coupled with Ohio law created a property interest of which he cannot be

deprived without a hearing. Because Murtha voluntarily agreed not to seek renewal of his employment contract, he has no property interest in continued employment that implicates due process.

To have a property interest sufficient to trigger the due process protections of the Fourteenth Amendment, there must be a "legitimate claim of entitlement" to the property that goes beyond a "unilateral expectation" or an "abstract need or desire for it." *Id.* at 577. An entitlement is created and defined by an independent source of law, such as a state statute. *Id.*; *see, e.g.*, *Fowler v. Benson*, 924 F.3d 247, 257–58 (6th Cir. 2019) (looking to Michigan state law to determine if plaintiff had a property interest in a driver's license); *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552–54 (6th Cir. 2017) (looking to Kentucky state regulations and contract law to determine if plaintiff had a property interest in his role as Chair of the Department of Health Behavior at the University of Kentucky); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) ("A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances."). We look for a "mutually explicit understanding[] that support[s] [a] claim of entitlement" to the property. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

In very similar circumstances to those here, we declined to hold that a plaintiff's asserted interest was cognizable under the Fourteenth Amendment. In *Harris v. Detroit Public Schools*, a school principal was caught up in an internal investigation. 245 F. App'x 437, 440 (6th Cir. 2007). He was placed on paid leave, and then voluntarily resigned. *Id.* at 440, 443. The school's administration released an investigative report in a way that he deemed "character assassination." *Id.* at 440. Harris complained that the school violated his due process rights by placing him on paid leave and by refusing to rescind his resignation. *Id.* at 444. We held that "[b]ecause Harris

voluntarily resigned . . . [he] has not established a deprivation of a constitutionally protected interest." *Id.*

Here, as the district court found, Murtha may have had a property interest prior to signing the Transition Agreement, but Murtha waived that interest when he voluntarily agreed not to seek renewal of his employment contract. When Murtha signed the Transition Agreement, he bargained away any claim that Rossford violated the state law provision limiting nonrenewal of a contract to "good and just cause." Ohio Rev. Code § 3319.16. He also bargained away the opportunity for a hearing regarding the nonrenewal of his contract to which he might otherwise have been entitled under state law. *See id.* § 3319.02(D)(4) ("Before taking action to renew or nonrenew the contract of an . . . administrator . . . the board shall notify each such employee . . . that the employee may request a meeting with the board."). He did so in exchange for promises made by Rossford, including that Rossford would provide a reference when he seeks future employment. In entering this bargain, Murtha relinquished any property right he may have had that would implicate the due process protections of the Fourteenth Amendment. *See Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004) ("'If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights.'") (quoting *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999)).

Murtha tries to differentiate this case from *Harris* by claiming that his agreement not to seek renewal of his employment contract was induced by false promises. Murtha did not raise this argument in the district court, and there is no indication in the complaint of such improper inducement. Further, we stated that "[t]he mere fact that an employee is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is

involuntary, provided that the employer had good cause to believe there were grounds for termination." *Rhoads v. Bd. of Educ.*, 103 F. App'x 888, 895 (6th Cir. 2004). Although Murtha may now wish he had not voluntarily relinquished his employment, that does not create a property interest that merits constitutional protection.

Murtha also claims that Rossford "contractually assured him that his exercise of those procedural rights would not be necessary . . . in exchange for[] his voluntary separation from employment." Appellant's Br. at 19. Although Murtha may have a state law claim for breach of contract under this logic, the Fourteenth Amendment does not cover such a claim. *See Lambert v. Hartman*, 517 F.3d 433, 445 (6th Cir. 2008) ("But to constitutionalize a harm of the type [plaintiff] has suffered would be to open a Pandora's box of claims . . . . ").

### ii. Informational Privacy

In addition to his interest in continued employment, Murtha asserts a property interest in informational privacy through state confidentiality laws (Ohio Rev. Code § 3319.311, Ohio Admin. Code § 3301-73-04). Appellant's Br. at 20. Specifically, Murtha challenges Rossford's release of the Transition Agreement and investigator's report to the public and Superintendent Creps's release of a letter to the same effect. He alleges that the report was "specifically redacted to remove exculpatory information." Appellant's Br. at 19. We need not address the merits of whether Creps's, Rossford's, or the Board's actions breached the terms of the Transition Agreement or violated other state laws. Even if they did, these state laws are not the type that give rise to constitutionally protected property interests. "This court has never acknowledged a constitutional right to privacy based on the infringement of a property interest." *Lambert*, 517 F.3d at 445; *see also Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 575 (6th Cir. 2002) (rejecting a challenge to a policy mandating public disclosure of real estate holdings

because "[t]he privacy interest one may have in one's personal finances and real estate holdings is far afield from [the] intimate concerns" recognized as fundamental privacy interests); *Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1999) (rejecting a challenge to a sex-offender registry on constitutional privacy grounds because the law did "not impose any restrictions on [the plaintiff's] personal rights that are fundamental or implicit in the concept of ordered liberty"). The privacy interest here is not like an employment contract or a tenure provision that could potentially create an entitlement. *See Sharp v. Lindsey*, 285 F.3d 479, 489 (6th Cir. 2002); *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 579 (6th Cir. 2021). Rather, any violation of these state laws can be raised in state court.

### B. Liberty Interest

In addition to the alleged property interests, Murtha asserts a liberty interest in "his good name, reputation, honor and integrity." Appellant's Br. at 22. Because the only change in legal status accompanying the alleged stigma was Murtha's voluntary agreement not to seek renewal of his employment contract, he has no liberty interest in his reputation that implicates due process.

Liberty under the Fourteenth Amendment is an indefinite concept that "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). However broad, the concept of liberty is not unlimited. *See Roth*, 408 U.S. at 570 ("[T]he range of interests protected by procedural due process is not infinite."); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) (noting that the Fourteenth Amendment is not a "font of tort law").

Whether an interest in one's reputation falls under the umbrella of liberty interests protected by the Fourteenth Amendment was at issue in *Paul*. There, a photograph of the plaintiff was included on a flier labeled "Active Shoplifters" that was delivered to 800 merchants in Louisville, Kentucky. *Paul*, 424 U.S. at 695. The plaintiff had been charged with shoplifting, but his guilt or innocence had not yet been decided. *Id.* at 695–96. He received a call from his employer saying that he was not being fired but warning him that he "had best not find himself in a similar situation" in the future. *Id.* at 696. Suing under § 1983, he claimed that the stigma of the flier would inhibit him from entering businesses and would impair his future employment opportunities. *Id.* at 696–97. The Supreme Court denied his claim and held that "reputation alone, apart from some more tangible interests such as employment" is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701.

Stigma must be accompanied by some "effect on the legal status of an organization or a person, such as loss of tax exemption or loss of government employment" to constitute a deprivation of liberty; a "sanction[] applied by public disapproval, not by law," is not enough. *Id.* at 704–05. Because the plaintiff in *Paul* was not fired, meaning he suffered no change in legal status, the stigma of being called a "shoplifter" did not entitle him to due process protections. The same is true here. Murtha states "a classical claim for defamation" in state court, but he has no claim under the Fourteenth Amendment. *Id.* at 697.

Murtha cites *Roth* for the proposition that "'[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" 408 U.S. at 573 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). However, *Paul* was decided after *Roth*, and clarified that defamation alone is insufficient to give rise to the protections of the Fourteenth Amendment. 424 U.S. at 710 ("Thus

it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment.").

Here, Murtha suffered no change in legal status in conjunction with the alleged stigma. He was not terminated, demoted, or constructively discharged. He voluntarily agreed not to seek renewal of his employment contract. And he did so in exchange for promises made by Rossford. Murtha cannot then turn around and use a mutually beneficial agreement to claim Rossford took adverse employment action against him. *See Harris*, 245 F. App'x at 444 (quoting *Paul*, 424 U.S. at 701) ("Because Harris voluntarily resigned . . . he cannot satisfy the 'stigma-plus' standard . . . which requires a plaintiff to demonstrate the infringement of 'some more tangible interest [ ]' than reputation alone, 'such as employment.'"). Although Murtha may feel he has been "sanctioned . . . by public disapproval," he did not suffer the sort of legal sanction envisioned by *Paul*. *See* 424 U.S. at 704–05. Any harm to his reputation that may give rise to a claim of defamation is unaccompanied by the requisite change in legal status that would bring it under the protections of the Fourteenth Amendment.

Nevertheless, Murtha argues that he should at least be entitled to a name-clearing hearing. In *Ludwig v. Bd. of Trs. of Ferris State Univ.*, we laid out the elements that must be satisfied to entitle a person to such a remedy: (1) "the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment"; (2) "a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance"; (3) "the stigmatizing statements or charges must be made public"; (4) "the plaintiff must claim that the charges made against him were false"; and (5) "the public dissemination must have been voluntary." 123 F.3d 404, 410 (6th Cir. 1997)

(citations omitted). Murtha simply does not meet these elements. He was not terminated from his employment; he voluntarily agreed not to seek renewal of his employment contract. Further, public dissemination of the report was required by Ohio's public records law. Accordingly, Murtha has asserted no constitutionally protected interest which entitles him to a name clearing hearing.

### 2. Substantive Due Process

Murtha makes an argument under substantive due process nearly identical to his liberty argument under procedural due process. His arguments are no more successful here.

A violation of substantive due process can occur when state action deprives a person of "fundamental rights" that are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted); *see also J. P. v. DeSanti*, 653 F.2d 1080, 1088 (6th Cir. 1981). The list of such rights is short. *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007). In contrast to procedural due process rights, which are grounded in an independent source of law and can be "modified or abolished by the legislature," substantive due process rights are deemed "fundamental" in the Constitution and are, consequently, few and far between. *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–51 (6th Cir. 2003). "[T]he fact that this court has recognized a liberty interest in one's reputation does not necessarily mean that such an interest is either 'fundamental' or 'inherent in the concept of ordered liberty.'" *Lambert*, 517 F.3d at 444.

In *Lambert*, the Court declined to extend due process protections to privacy and reputational interests like the ones asserted here. *Id.* at 446. There, an Ohio woman brought a privacy claim under the Fourteenth Amendment when her social security number was made public, resulting in her identity being stolen. *Id.* at 435. We held that, although she had an interest in her

good credit because it is helpful to everyday life, this sort of interest is not fundamental and so is not protected by the Due Process Clause's substantive component. *Id.* at 444–45.

Similarly, in *Harris*, this Court declined to recognize a substantive due process right after the plaintiff voluntarily resigned. We noted that "'[t]he substantive Due Process Clause is not concerned with the garden variety issues of common law contract'; that is, because [the plaintiff's] contractual interest, if any, in his employment may be 'redressed adequately in a state breach of contract action, [it] is simply not a proper subject of federal protection under the doctrine of substantive due process.'" *Harris*, 245 F. App'x at 444 (quoting *Bowers v. City of Flint,* 325 F.3d 758, 763–64 (6th Cir. 2003)).

Undoubtedly, Murtha has an interest in his reputation and in keeping this situation private. However, it is not an interest that is specifically guaranteed by the United States Constitution nor is it "implicit in the concept of ordered liberty." *Young v. Township of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) (citation omitted). Therefore, Murtha's interest is not one that entitles him to the protections of substantive due process.

## IV. Conclusion

For these reasons, Murtha's constitutional claims are not claims upon which relief can be granted. We AFFIRM the district court's dismissal of Murtha's federal constitutional claims pursuant to Rule 12(b)(6) and dismissal of the remaining state law claims without prejudice.